Our next case on the call of the docket is agenda number three, case number 113-216, People v. Elijah S. Lacy. Counsel for the appellant, please proceed. Good morning, Your Honors. Counselor, may it please the Court, Assistant Attorney General Garson Fisher for the People. The purpose of the Speedy Trial Act is to act as a shield to protect the defendant's constitutional right to a speedy trial. It is not, as applied in this case, to be used as a sword to strike down legitimate criminal charges against the defendant. The lower court's interpretation of the statute was contrary to the statute's plain language, and to the extent that that plain language is ambiguous, the lower court's interpretation perverts the purpose of the statute, which is to act as a prophylactic to protect the constitutional speedy trial right, and as this Court has recognized, necessarily incorporates the same balance between the defendant's right to a speedy trial and the people's right to justice that is found in the constitutional standards. It is true that the act's protections are to be liberally construed to ensure that it fulfills this purpose of protecting a defendant's constitutional right to a speedy trial, but this Court has declined to read those protections so liberally as to infringe on the General Assembly's right to set reasonable limitations on the defendant's right to receive trial within the statutory time period, and both the statutory and constitutional speedy trial rights are subject to a balancing analysis against the people's interest in justice. And in passing subsection C, the General Assembly, as is its prerogative, applied this balancing analysis. The General Assembly decided that contrary to defendant's position, the people should not be required to risk defendant's flight or the safety of the public by releasing an accused murderer on bond simply because circumstances beyond the people's control require a slight delay in proceedings, nor should the people be required under those circumstances to proceed to trial without material evidence that will be available following a slight delay. In essence, the defendant's argument is that this Court should reset that balancing analysis more in the defendant's favor and less in the people's interest in justice. What is the significance of the statutory phrase, not more than an additional 60 days? Well, it requires that any continuance of the cause under subsection C be no longer than 60 days, which serves a couple of purposes in furthering the statute's goal of protecting the constitutional right to a speedy trial. It requires the State to come back at least following no more than a 60-day period if it requires an additional continuance, and it gives the Court an opportunity to once again look at the limiting factors in subsection C that control when the State can receive a continuance. Is there any limit to the number of continuances the State could seek? There are a couple of limitations that will come into effect. First, the constitutional right to a speedy trial is always a backstop behind the statutory right. Second, the statute requires that the people demonstrate diligence in acquiring the missing evidence and a reasonable belief that the evidence will be available following the slight delay. And the Court could well hold following a first continuance or a second continuance that is no longer reasonable for the people to believe that this material evidence is going to become available. And third, the continuance is always at the Court's discretion under the terms of subsection C. So the trial court could decline to grant continuance for those reasons. Could the Court extend continuances for separate pieces of evidence? The first continuance is on one issue, like here, and the second continuance is a request on a totally different issue? That would give a greater length of time. It would give a greater length of time, Your Honor, but there is no express limitation in the statute that would restrict the Court from doing so, and allowing the Court to do so is not inconsistent with the statute's purpose of protecting the constitutional speedy trial right. This case demonstrates, I think perfectly, why the people's interpretation of the statute is more consistent with the statutory purpose, which, as again mentioned, incorporates this balance between the speedy trial right and the right to justice, because these were circumstances that were clearly beyond the control of the people that required only slight delays in proceedings in order for the people to have access to material evidence that was unavailable. In one case you had a witness who was sick and whose doctor didn't want her to travel, and in another case you had an active member of the military who was unavailable due to deployment. And even in Barker v. Wingo, the Supreme Court recognized that the unavailability of material evidence due to conditions beyond the people's control would be a legitimate excuse for any length of delay. So allowing a slight delay, a continuance of no more than an additional 60 days, to the cause before the people would once again have to go before the Court and seek another continuance, or in this case, in each case, the people have their evidence available at the end of a single continuance, respects the balancing analysis that's identified in Barker and then adopted by this Court in Crane for... The delay regarding the officer, that's Officer Ramey? Ramey, I believe, Your Honor. And the State offered to substitute a different witness in his place? Yes, Your Honor. But the defendant wanted to cross-examine Officer Ramey? Yes, Your Honor. If the State is not going to present him as a witness, how could the defense insist upon cross-examining him? Well, the State ideally, I think, and the record is somewhat limited because the case didn't go to trial, but the State ideally, I think, would have liked to introduce Officer Ramey's testimony regarding the collection of evidence at the crime scene. His superior, as I understand it from the record, wasn't present at the collection, but he conducted a walk-through with Officer Ramey, so his knowledge of the collection of the evidence was not firsthand in the way that Officer Ramey's was. The people believe that in the absence of Officer Ramey's availability that it was sufficient, but the defendant's position is sort of like a compulsory process kind of claim almost, that they wanted Officer Ramey available to testify regarding the collection of that evidence. So this is a seven-day delay? I believe it's a 21-day delay from June 21st, or slightly longer, June 21st to July 19th. So if that delay can be attributable to the defendant, then would reversal then be in order? Yes, Your Honor, because even if Subsection C created a de facto 120-day period, which it does not, but even if that were the case, because the defendant contributed to that final delay, his motion to dismiss should have been denied. Could you help me a little bit more with that scenario? I don't really understand your argument that the defendant contributed to the delay, and I want to give you an opportunity to convince me. So the motion was made to extend the time to continue the case because this witness was unavailable, right? Yes, Your Honor. Okay. And then what happened then? Well, I think it is important to take the events over the timeline precisely here to track the continuances. On April 26th, the defendant sought an open-ended continuance for the opportunity to confront Officer Ramey. I'm not sure I understand what that means. I mean, the State has the burden of proof, right? So if you're going to go to trial, you're ready for trial. You're going to answer ready for trial or you're not ready for trial. And you said you were not ready for trial, correct? The people offered a motion to present Lieutenant Echols' testimony and Officer Ramey's stead regarding the collection of the evidence. Like a stipulation or something? Are you requesting a stipulation? Is that what this is about? It wasn't quite a stipulation. It was more a ruling that Lieutenant Echols, who was not present at the collection of the evidence, but had conducted this video walk-through with Officer Ramey, could testify as to the collection of the evidence. And the defendant said, no, I have a Crawford right to have my accusers in court? Yes, Your Honor, except it's really, I think, more of a compulsory process right then. That's right. I understand. It sounds to me like you're saying it was the defendant's fault because he said, the State has to bring the witnesses in against me. How is that a continuance that's charged against the defendant? Well, I think that it's not a question of saying it's solely the defendant's fault, but that by refusing to accede to Lieutenant Echols testifying as. . . Some of the State wanted a stipulation that a witness who is not the proper witness would testify in place of the proper witness? Who was unavailable because of his continuing military duty. And the people said at the time to the court, we would like either to be able to present this alternative witness or to be able to present the material evidence provided by Officer Ramey when he becomes available following a short delay. And the court at the time when the State presented the motion, the court granted the continuance to July 19. Then when the original judge returned, he looked at the situation differently and ruled that the people had now gone beyond the time frame. So the people were prepared to either try and present the case with Lieutenant Echols or to try and accede to the defendant's demand that Officer Ramey testify. Or maybe try to carry your burden by calling the proper witness. Well, there is a second constitutional right of the defendant that is certainly implicated by this scenario in this case, but it is not unique for a defendant to sometimes have to choose between a couple of his constitutional rights. For example, in a choice of counsel case, sometimes a defendant contributes to the delay in a trial and puts off the time of his trial in order to assert his right to choice of counsel. This is a similar scenario in asserting his right to confront the witness who collected the evidence against him. He contributed to this short delay in proceedings from June 21st to July 19th. Mr. Fischer, and this is for opposing counsel as well, but you glossed over the fact that the first judge indicated with respect to the second continuance it was granted, right? Yes, sir. And then basically another judge comes in and for all practical purposes overrules that position. Is there a law of the case problem here where the state relied upon the first ruling or would you concede that that doesn't matter if this Court finds a speedy trial violation? I don't think it's a law of the case problem. It certainly contributed to the ability to use the Speedy Trial Act here to attack the legitimate charges against the defendant rather than to use it as a shield. But there was no actual ruling on the legal question of application of the Speedy Trial statute involved in the granting of continuance. So you're not using that factual scenario at all to bolster your argument here outside of the fact that it somehow implicates the sword versus shield aspect of the case? Correct, Your Honor. All right. You no longer need to address it. To follow up on Justice Tice's question with regard to whether the defendant contributed to the delay, it seems to me, if I understand what happened here, that the state could have proceeded without Officer Remy, without seeking the defense approval, and the defendant would simply object if the witness was not qualified, that nothing would have prohibited the state from going ahead, even if the defendant said, I'm not going to agree or stipulate. Is that true? Yes, Your Honor, but it would have forced the state to risk presenting their case without the availability of material evidence. Right. And in passing Subsection C and allowing for these kinds of continuances, the General Assembly has viewed this situation and said that the state shouldn't, when the circumstances are beyond its control, have been required to proceed to trial without material evidence when that evidence will be available following a short delay. Are you contending this is simply an issue of statutory construction and the statute doesn't limit the number of times you can request? Yes, Your Honor. With that in mind, and it strikes me that Subparagraph C says that on application of the state, the continuous date may be for not more than an additional 60 days. Now, what is the additional? An additional to what? Is it an additional to the date of trial or is it an additional to the 120-day rule in Subparagraph A? I believe it's additional to the date of trial or the amount of time that is run in the cause so far. There is no, the plain language of this statute does not reference the 120-day speedy trial period. It doesn't reference the speedy trial period at all or even say the word period. What it says is that the cause may be continued for not more than an additional 60 days. I believe it just refers to the amount of time that's run in the cause so far. And there is no express limitation that would restrict it to a single continuance or limit the cumulative days of continuances to 60. And this Court has held before that it should not depart from the plain language of a statute to read in a limitation that's unexpressed. Of course, if we read Subparagraph A with C and Subparagraph A says the trial shall be within 120 days from the date he was taken into custody, but in Subparagraph C the state gets an additional 60 days, then he would be limited to one 60-day extension. I don't think that reading the Act cumulatively requires that an additional 60 days be read as tacked onto the 120-day period. I think the General Assembly could have easily stated such a limitation. They understand how to draft a bill to accomplish that. They could have said so long as the continuance does not extend the trial date more than 60 days past the expiration of the speedy trial period in Subsection A or B. And they did not express any such limitation in Subsection C. And if the language is ambiguous, then the people's reading of the statute is more consistent with the purpose of the statute, which does incorporate this balance that's discussed in Barker and discussed by this part in Sandoval, for example, that the speedy trial right is always balanced against the people's right to justice and an overly mechanical application of the Act so that in a circumstance exactly such as the one in this case, the people are left with no choice but to either proceed to trial without material evidence or risking not having availability of material evidence or to release an accused murderer who would not otherwise have been released on bond would be to radically reset the balance that the General Assembly engaged in. And this Court has held that it's the General Assembly's prerogative in the context of the statute to engage in that balancing analysis. Unless the Court has further questions. Thank you, Your Honors. Thank you, Mr. Fisher. Counsel for the appellee. Good morning, Your Honors. Counsel, may it please the Court. My name is Christian Burrell, and I am the attorney for the appellee defendant Elijah Lacey. The State's argument that they put forth has no support in the plain language of the statute, has no support in the statute's purpose, and it has no support in existing case law. The statute, as we've heard today, clearly gives the State 120 days to bring a defendant to trial that's in custody. If the benefit to the State of the rule is that if they bring him to trial in less than 120 days, he is foreclosed from any speedy trial claim against the State. The burden against the State there is that if they take more than 120 days, unless they get the exception, that the defendant can make a speedy trial claim against the State. Now, in certain circumstances, one extension of 60 days is allowed if evidence material to the case, the State requests additional time to obtain that, and it appears that there's been due diligence by the State and that that evidence will be available at a later date. But that extension is for not more than an additional 60 days, and it needs to be read in the context of the whole statute, not just in that particular section. It applies to Section A. 120 days plus not more than an additional 60 is clearly 180 days or less. The rules of statutory construction support our view. You know, the rules of statutory construction are to give effect to the legislature's intent, and the way that we discern the legislature's intent is by looking at what's the plain meaning of the language. If you gave the attorneys here 120 minutes to speak, and you said they had a not more than an additional 60 minutes if there were questions, you would be rightfully upset if I was still up here 240 minutes from now, because clearly 120 plus not more than an additional 60 means 180. The State's reading actually graphs some new exception that's not in the rule. The State's reading says, well, there's 120, yes, and then there's not more than an additional 60, but we see we get that not more than an additional 60 one, two, three or more times, however many times the trial court agrees to. Why isn't court scrutiny and due diligence a sufficient safeguard to protect the rights of the defendant and the rights of the public? Because at that point, the legislature has already expressed their weighing of those issues with the time limits that are already in the statute. The State would rather have it go back to a complete subjective analysis, back to constitutional speedy trial. And if that's the case, then the problem is that there's always going to be one more thing that the State's going to want to have for trial. There's always going to be one more thing to bring to trial or one more witness to try to secure, and that does not give effect to the statute. Without the statute, that wouldn't be the case, but here we have a statute from the legislature with time periods in them, and we need to pay attention to the time periods as they're written. Under the State's view, you know, you could have 120 days and add an additional 360 days as long as you paid lip service to the statute and did it 60-day increments, and that very well could have happened in this case because Officer Dale Remy was deployed to Afghanistan. Luckily, he was at the end of his deployment. If he were to be at the beginning of his deployment, the State would have come in and said, well, we need an extra 360 days because he's not going to be back for a year, but we have to kind of follow the statute, so let's do six continuances of 60 days each. We'll come in on each continuance and make the same argument that was already ruled on on the prior one, and we'll just do it baby steps 60 days at a time to get out there to the 360 days we need. And in that case, it makes a mockery of the statute because if you're weighing it on the first 60-day period and then you come back and have the same argument and the same argument and the same argument, that's not what the legislature intended. Also, the State tries to move from the singular to the plural here. The statute says evidence. If the State needs to obtain evidence, meaning all the evidence, not each piece of evidence, not this witness, we need a 60-day continuance, which they got with Rebecca Pope. That one was proper under the statute. But then we need another 60 days for Dale Remy. Well, then they got their second bite of the apple. They got another 60-day continuance that we contend offends the statute. What if there was a third witness? You know, the statute says evidence. It doesn't say each piece of evidence. In fact, there's another section in the statute for DNA that has the same analogy. Counsel, are you arguing that the Remy evidence was not, that continuance was not proper? Yes. The first, there was already one 60-day continuance given back, and I believe it was February, for Rebecca Pope. That was the extension that the statute contemplates. Then they came back and got a second extension of 60 days. That's the one we feel is improper. On Remy? On Remy, yes. Well, did the defendant not file its own motion to continue the case to bring Remy in? The defendant did file a motion before. They're trying to attribute the last motion to continue to the defendant. The defendant did file a motion in April asking for a continuance. One of the reasons in that motion was for Dale Remy to be available for cross-examination. And that was allowed until the new trial date was set in July 21st. Is that right? I believe the new trial date was somewhere June. I misspoke. It meant June 21st. June 21st. Yes, Your Honor. And the state wasn't ready at that setting either, so they requested their last motion to continue. So the last motion to continue. Well, I mean, but as I understand the record, his return date had changed from the July return date from June to July. It had, Your Honor. And so the state was forced to make another motion to continue, ask for a second hearing. But at the same time, when the tender was made to use Lieutenant Echols, if I've got the title right, you folks objected to that. We did, because defendant. I'm just trying to figure out where this is, I mean, the chronology. Up to this point, there's no speedy trial violation. You would agree the date was set for June. They offered Echols. You said no. Is that right? Yes. Lieutenant Echols did not collect the evidence at the crime scene. The state's offer was you can either waive your speedy trial right or you can waive your rights under the rules of evidence. They said you must accept the stipulation to stipulate the evidence that Dale Remy collected at the scene, again, against yourself, if you want your speedy trial right. If you don't want your speedy trial right, then you can wait to have him come in. Now, we did make a motion in April to continue, and that motion is already being attributed to the defendant. The state is trying to attribute the motion after that to the defendant that they made that we objected to as well, and they look to this language in our April motion to continue saying, well, you asked to cross-examine Dale Remy, so when he wasn't here later, you can't argue then, even though you opposed the motion and the state made the motion. That kind of takes the language out of context there, because we didn't wish to call Dale Remy as a witness. You know, we weren't wanting to put off the trial to make sure that Dale Remy was there. We were trying to oppose this notion that somehow we have to stipulate an evidence against our client just to make sure he has a speedy trial right. And to hold that that was permissible would set a dangerous precedent, because in those cases, any time the state doesn't have their witnesses, their evidence, in time for the speedy trial, they'll just, you know, ask the defendant to stipulate that in. The case law doesn't support the state's argument either. This court in 1973 in People v. Onbaugh mentioned that in this case, the defendant was incarcerated for the maximum statutory purpose of 180 days. In People v. Love in 1968, this court said, in our state, following the arrest of an accused, it is possible for the prosecution to secure up to 180 days. Also, in People v. Arendt, the court mentioned that 103-5 provides for an extension of the 120-day period for an additional 60 days. Now, those weren't the precise issues in those cases, and the state argues that's addictive, but we find that there's no reason to come to a different conclusion. It's basically simple math. 120 plus not more than 60 equals 180 days or less. Now, the state makes a big deal that tries to blame the defendant for causing this delay. Well, let's look, what is the delay here? Officer Remy wasn't available. That's the second 60-day extension that's not permissible. The defendant didn't make Officer Remy unavailable. The defendant didn't have anything to do with his military commitments, as honorable as those are, and the defendant wasn't involved with the Carbondale Police Department assigning an officer to collect evidence at a murder scene that they knew had military commitments. The defendant's not responsible for the delay of the trial either, because the state could have had the trial without Officer Remy. Officer Remy wasn't the centerpiece of their case. He was an officer who conducted evidence collection of the crime scene, but they were free to either release the defendant on bond, or if that option was not agreeable, they were free to have the trial anyway within the speedy trial period. Now, the trial court attributed 203 days to the state, and as we've said, our view of the statute and the case law and the statutory construction and the plain meaning means that the state has 180 days or less if they're granted the extension. The trial court's attribution of 203 days to the state is to be given great deference and should be sustained absent a clear showing of abuse of discretion under People v. Hall. And so the trial court was in a better position than a reviewing court to decide who was responsible for what delay. The motions that we made are already attributable to us under the present calculation. The only way the state tries to get under 180 days, which is a new argument here before the Supreme Court of Illinois, is by attributing that last motion to continue that the state made, that the defendant objected to, somehow attributing that to the defendant. Now, that is a dangerous argument because the defendant opposed the motion and the defendant did not make the motion. Now, the state tries to argue that the defendant somehow tricked the state or put them in this catch-22 position. Well, the rules of evidence are not a trick that the defendant came up with. They apply in every case. The defendant has a right to cross-examine his accusers. The defendant has a right to insist that chain of custody be followed when he's on trial for murder. The defendant didn't make up the speedy trial statute or the right to speedy trial either. Now, the state tries to shoehorn in this argument by saying that, well, sometimes the defendant has to choose between their rights. This is not a case where the defendant had to choose between his rights. The cases that they cite are cases like People v. Mayo where the defendant discharged his attorney before trial and then wanted his trial within the speedy trial period, and the court said, well, you know, you fired your attorney. We can't have the trial on time within your speedy trial. The Mayo defendant took a proactive step of firing his attorney. Here, this defendant didn't do anything like that. He didn't deploy Officer Remy to Afghanistan. He didn't, you know, make up the rules of evidence, and he didn't make up the right to speedy trial. They also looked at People v. Hall to say that, well, defense counsel filed motions to continue. In Hall, the defense counsel filed the motion, and then later on the defendant tried to disavow himself from the motion filed by his own counsel, and the court rightly said, well, you know, you have an attorney. He filed the motion. You know, you're bound by that.  was opposed by the defendant and was filed by the state. Counsel and defendant were in perfect unity in opposing that motion. Are you agreeing that the April 23rd defense motion for continuance, that time is attributable to the defendant until June 21? Yes, and that was attributed by the trial court. The only difference here on appeal is now, for the first time, the state tries to take the period after that  And they also argue that was an open-ended motion. They do argue that. You know, I think that that really takes – that is a reason in the motion to continue, admittedly, but there's other reasons in there, and the main reason for the motion to continue on April 23rd was the state informed counsel that they were considering filing a new information with a new theory of the case, and we didn't put Dale Remy's availability in there in an effort to assure that Dale Remy was there. We just wanted to make sure that we weren't going to have evidence admitted, you know, over our objection by the trial court without the witness there. The defendant would have rather had his trial within his speedy trial rights. And the defendant didn't – you know, the April 23rd motion, the state seems to argue that, well, the state relied on your motion on April 23rd and you contributed to the delay. Nothing in our motion on April 23rd made Dale Remy's available any different. It's not a situation where he was headed back from Afghanistan, he was coming back in the United States, we file a motion to continue, so he goes back to Afghanistan. It wasn't like that at all. There was no reliance by the state on our motion, you know, to say that, you know, but for your motion we would have been here on time. He was unavailable the whole time. In fact, he'd been unavailable for, you know, almost a year. Your Honors, in closing, because the statute's clear that 120 plus not more than an additional 60 days equals 180 days, because you need to read the whole statute as a whole, because the plain meaning of the statute is clear, because the case law supports the defendant's view, because the trial court already attributed 203 days to the state, because it was not an abuse of discretion to do so, because the defendant did not make and, in fact, oppose the motions to continue, we ask that you affirm the trial court, the appellate court, and uphold the defendant's right to speedy trial under the statute in Illinois. Thank you, Mr. Burrell. Mr. Fisher, rebuttal. Thank you, Your Honors. First, I just want to point out that if the court adopts the people's reading of the statute, it's not necessary to resolve the issue of attribution of the delay from June 21st to July 19th. At that point, if the court were to adopt the people's reading of the statute, it would resolve the case because the people would have been entitled to a second pursuant to subsection C. The scenario that the defendant outlines where the people use subsection C, in essence, to extend their investigative time or as a delaying tactic to go on a fishing expedition, I believe, is a false concern because it's adequately addressed by the restrictions that are expressly, the limitations that are expressly present in subsection C requiring not just that material evidence be unavailable due to causes beyond the people's responsibility, but also that the people have a reasonable belief that that evidence will be available following a short delay. But it is also worth noting that in the scenario that the defendant laid out, looking at Barker v. Wingo, for example, I think that the defendant's constitutional rights to a speedy trial would still be adequately protected because the unavailability of a witness due to reasons beyond the state's control is something that the Supreme Court, the U.S. Supreme Court, has recognized as a legitimate excuse for delays that puts it outside of speedy trial concerns. In terms of the use of the Speedy Trial Act as, in essence, a tool to cut a defendant loose from a legitimate prosecution, the defendant has admitted in his brief that his goal here, or his preference here, was to successfully keep evidence out of the trial. And the speedy trial statute was never intended to be used as a tool in that way to either cut a defendant loose or to force the state to trial with less than the material evidence that they seek to introduce. Mr. Fisher, if we agree with the defendant's statutory argument, right, then you're left with that somehow this last continuance had to be, at least in some fashion, attributable to the defendant. Help me understand that argument. Well, and there, one of the important things to consider is the standard for attributing time to the defendant is not that the defendant be responsible for the delay or that the state somehow have relied on the defendant's actions in making its decision, but that the defendant in any way contributed to the delay. Once the defendant contributed at all, the time is attributable to the defendant. And here, as the defendant acknowledges, he filed the continuance in part for the purpose of ensuring Officer Remy's availability for cross-examination at trial and continued to assert his objection to Lieutenant Echols testifying in Officer Remy's stead when the people came back and said, look, there's going to be a slightly longer delay before Officer Remy returns from Iraq or Afghanistan. If we can't have additional time to wait for him to come back, and it's a short delay from June 21st to July 19th we're talking about here, then we'd like to be able to introduce this evidence via Lieutenant Echols. Defending continued to assert his objection to that plan. And in doing so, we're not saying he's become solely responsible for the delay, but asserting that, continuing to object to that alternative plan contributed to the need to wait to July 21st to go ahead with the trial, and that's sufficient to attribute the time to him under the standards that this court has articulated. And at the time, the people expressed to the trial court, we don't think that the defendant can have it both ways. He can't both refuse to allow us some way to bring in this material evidence other than Officer Remy's testimony and also say that he is objecting to a short delay so that Officer Remy is available so that he can cross-examine Officer Remy. And the trial court initially, in granting the continuance, agreed with him, and then subsequently a different judge granted the motion to dismiss. Did the trial judge ever comment on your, well, I guess when you sought the second continuance, you said if you're going to deny the continuance, judge, you should allow Echols to testify. Correct. He never commented on that, he just granted the continuance. Granted the continuance. So your position then would be that since they were saying from the get-go they didn't want Echols and they wanted Remy available to cross-examine, that somehow in part that second continuance was attributable to them? Yes. In essence, a continuation of the objection or the grounds for the April 26th continuance took us all the way until Officer Remy was available to testify. On April 26th they sought a continuance in part so that Officer Remy would be available. That term that they sought the continuance for wasn't satisfied until July 19th because of an unanticipated extension of Officer Remy's service. Counsel, could I go back to the statutory argument? This statute's been around for a very long time. And certainly this is the interpretation of the statute. I don't see any cases that have directly addressed it. But have you seen this fact pattern in any case? I believe that this is a very unusual fact pattern. I can't say for certain that it's unique. I believe it's very unusual for a couple of reasons. First, you have an unusual confluence of events with multiple witnesses for reasons that are clearly beyond either party's control becoming unavailable for short periods of time. But additionally, the change in judges at the trial level contributed directly to the case playing out the way that it did. It's, I believe, the intention of the General Assembly in Subsection C in the way it's written to allow discretion and some flexibility for the court to give the people short continuances when material evidence is unavailable, even if that happens a couple of times in a single trial. But I don't think it's going to happen or has happened very often. So we've never seen multiple continuances given in the many, many, many years, 30, 40 years? We've never seen this fact pattern happen. Certainly not in the published case law. And in the cases that defendant has cited to where there's in dicta some reference possibly to a de facto 180-day period, if that statement is actually, you know, relating to Subsection C, it's done so without express logic or reasoning behind the arguments. I don't think that there's any guidance to be found in that dicta for this court in resolving the issue. This is the first time that the issue has been presented to the court for a reasoned resolution. The right to a speedy trial is a shield to protect the defendant from unjust and prejudicial delays caused by the state. And Subsection C, as written, provides such protections. The Speedy Trial Act is not meant to be a sword that can be used to cut a defendant loose from legitimate criminal charges. But as applied in this case, the statute did just that. It prevented the people from trying a man who was accused of murder because of a slight delay due to circumstances that were beyond the people's control. And because the plain language of Subsection C doesn't limit the number of times a cause may be continued, the people's interpretation of the act best advances the purpose of the statute. And because defendant did contribute to that final delay from June 21st to July 19th, the defendant's motion to dismiss in this case should have been denied. Unless the court has further questions for these reasons, as well as those stated in their brief, the people request this court reverse the judgment of the Appellate Court of Illinois, Fifth District, dismissing the charges against the defendant. Thank you, Your Honors. Thank you. Case number 113216, People v. Elijah S. Lacey, is taken under advisement as Agenda Number 3. Mr. Fisher, Mr. Burrell, we thank you for your arguments. Mr. Marshall, we're going to take a recess, I guess. We'll be back at 1055.